# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No. 2:16-cv-6122<br><br>**Filed via ECF** |

## DEFENDANT'S MOTION TO DISMISS THE CASE

Defendant Uber Technologies, Inc. ("Uber") pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4,[1] and for the reasons set forth in the Memorandum of Law in Support of Defendant's Motion to Dismiss respectfully moves this Court for an Order dismissing Plaintiff Brian Davis's claims.

Respectfully submitted,

/s/ *Paul C. Lantis*
Paul C. Lantis (PA #309240)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000 (t)
267.402-3131 (f)

*Attorneys for Defendant*
UBER TECHNOLOGIES, INC.

Dated: February 27, 2017

---

[1] The Federal Arbitration Act authorizes this Court to dismiss the action. 9 U.S.C. §§ 3, 4; *Blair v. Scott Specialty Gases,* 283 F.3d 595, 600 (3d. Cir. 2002). As an additional basis, and to the extent necessary, Defendant also moves to dismiss under Fed. R. Civ. P. 12(b)(1).

# CERTIFICATE OF SERVICE

I, Paul C. Lantis, hereby certify that on this 27th day of February, 2017, I caused the foregoing **Motion to Dismiss, Memorandum of Law in Support of Defendant's Motion to Dismiss, and Proposed Order on Defendant's Motion to Dismiss** to be filed via the Electronic Case Filing (ECF) System and the document is available for viewing and downloading from the ECF System to the following attorney of record who has consented to electronic service:

Caroline Hope Miller, Esquire
Derek Smith Law Group, PLLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103

*Attorneys for Plaintiff*

/s/ Paul C. Lantis
PAUL C. LANTIS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN DAVIS, | : |
| Plaintiff, | : Case No. 2:16-cv-6122 |
| v. | : |
| | : **Filed via ECF** |
| UBER TECHNOLOGIES, INC., | : |
| Defendant. | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CASE

Plaintiff Brian Davis ("Davis" or "Plaintiff") alleges Uber discriminated against him on the basis of his alleged disability in violation of the American with Disabilities Act. Uber respectfully requests that this action be dismissed pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, because Mr. Davis entered into a valid and enforceable arbitration agreement on October 20, 2015, agreed to arbitrate any disputes arising out of or related to his relationship with Uber and expressly waived his right to pursue such an action in court.

## I. BACKGROUND FACTS

### A. The Uber App Connects Independent Transportation Providers With Riders

Uber is a technology company that offers a smartphone application that connects riders looking for transportation to independent transportation providers, such as Mr. Davis, looking for riders (the "Uber App"). (Declaration of Michael Colman ("Colman Decl."), attached hereto as Exhibit 1 ¶ 3.) Uber offers the Uber App as a tool to both riders and transportation providers to facilitate transportation services, and it charges a service fee to transportation providers for use of the Uber App. (*Id.*) The Uber App is used by transportation providers and riders in over 175

cities across the United States. (*Id.*, ¶ 5.)

Uber has developed multiple software products, including (1) uberX, (2) UberBLACK, and (3) UberSUV. (*Id.*, ¶ 4.) Rasier-PA, LLC is a wholly owned subsidiary of Uber engaged in the business of providing lead generation services to independent transportation providers through the uberX product. (*Id.*, ¶¶ 2, 4.) Any independent transportation provider who wishes to access the uberX product to book riders must first enter into a contractual agreement with Rasier. (*Id.*, ¶ 7.)

### B. Plaintiff Is An Independent Transportation Provider Who Agreed To Arbitrate Claims Arising Out Of, Or Relating To, His Agreement With Uber

Plaintiff signed up to use the Uber App to connect with riders using the uberX product and his account was activated on October 19, 2015. (Colman Decl., ¶ 12.) Plaintiff could not access the uberX product to connect with riders unless and until he electronically accepted the applicable agreement, which at that time was the November 10, 2014 Software License and Online Services Agreement ("Rasier Agreement"). (*Id.*, ¶ 7.)[2] When Plaintiff logged on to the Uber App using his unique username and password, he was given the opportunity to review the Rasier Agreement by clicking a hyperlink to the Rasier Agreement within the Uber App. (*Id.*, ¶¶ 7-9.) To advance past the screen with the hyperlink and actively use the Uber App, Plaintiff had to click "YES, I AGREE" to the Rasier Agreement. (*Id.*, ¶ 9; see also *id.* at Ex. A.) After clicking "YES, I AGREE," he was prompted to confirm his acceptance a second time. (*Id.*, ¶ 9; see also *id.* at Ex. B.) On October 20, 2015, Plaintiff accepted, through the Uber App, the November 10, 2014 Rasier Agreement. (*Id.*, ¶ 12; see also *id.* at Ex. D.) Plaintiff was free to spend as much time as he wished reviewing the applicable agreement on his smartphone or other electronic device before accepting it. (*Id.*, ¶ 9.)

---

[2] The November 10, 2014 Rasier Agreement is attached as Exhibit C to Mr. Colman's Declaration.

The Rasier Agreement contains an arbitration agreement (the "Arbitration Provision"), which broadly requires transportation providers, ***if they do not opt out***, to individually arbitrate ***all*** disputes arising out of or related to the agreement or their relationship with Uber, including claims arising under the Americans with Disabilities Act. (*Id.* at Ex. C, p. 16.) The Arbitration Provision, in relevant part, reads as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.
>
> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with [Uber/Rasier], including termination of the relationship.

(*Id.* at Ex. C, pp. 15-16 (bold in original).)

Plaintiff's agreement to arbitrate this dispute was voluntary. While thousands of independent transportation providers have opted out of some version of the arbitration provision contained in Uber's various agreements with transportation providers, Plaintiff did not. (*Id.*, ¶ 13.) Plaintiff was provided 30 days to opt out of the Arbitration Provision, which could be

3

accomplished as simply as sending an email to "optout@uber.com," and was notified of his right to consult with an attorney regarding the dispute resolution provision:

> **Your Right To Opt Out Of Arbitration.**
> **Arbitration is not a mandatory condition of your contractual relationship with [Uber/Rasier]. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying [Uber/Rasier] in writing of your desire to opt out of this Arbitration Provision. . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and [Uber/Rasier] shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

(*Id.* at Ex. C, p. 18 (bold in original).)

The Rasier Agreement also contains extensive cautionary notices, both at the beginning of the agreement and before the Arbitration Provision, which advised Plaintiff of the ramifications of agreeing to arbitration and of choosing not to opt out, as well as of certain pending litigation against Uber. (*Id.* at Ex. C, pp. 1, 14-15.) The following notice appears on the first page of the Rasier Agreement:

> **IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE**

ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.

(*Id.* at Ex. C, p. 1 (bold in original).)

Plaintiff accepted the Agreement on October 20, 2015, and did not opt out within 30 days despite having the unfettered right to do so. Accordingly, Plaintiff is contractually bound to arbitrate his claims against Uber. (*Id.*, ¶¶ 10-12; *id*. at Exs. C-D.)

### C. Plaintiff Filed A Lawsuit Asserting Claims Arising Out Of, Or Related To, His Agreement With Uber

Despite the fact that Plaintiff agreed to the Arbitration Provision, on November 22, 2016, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. The Complaint alleges that Uber discriminated against Plaintiff in violation of the Americans Disability Act. (Compl., ¶¶ 32-36.) All of Plaintiff's claims are encompassed by the express terms of the Arbitration Provision,[3] and thus, Plaintiff must submit his claims to binding arbitration and this action should be dismissed.

### D. On February 17, 2016, Plaintiff's Counsel Refused Defendant's Request To Arbitrate His Claims Arising Out Of, Or Related To, His Agreement With Uber

On February 15, 2017, counsel for Uber sent an e-mail to Plaintiff's attorney and requested that Plaintiff dismiss this action in favor of arbitration. (Ex. 2.) On February 17, 2017, Plaintiff's counsel responded via email and stated, "we will be moving ahead with challenging the arbitration agreement." (*Id.*)

---

[3] "This Arbitration Provision also applies. . . [to] claims arising under the . . . Americans with Disabilities Act . . . ." (Colman Decl. at Ex. C, p. 16.)

## II. THE COURT SHOULD DISMISS THE COMPLAINT AND ORDER PLAINTIFF TO ARBITRATE HIS CLAIMS

The Court should dismiss the Complaint and order Plaintiff to arbitrate his claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4. While Uber is not a signatory to the Arbitration Provision that Plaintiff entered into with Rasier, the Arbitration Provision expressly states that "[t]his arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement. . . ." (Colman Decl. at Ex. C, p. 14.) The Arbitration Provision clarifies that "Uber is an intended third-party beneficiary of this Arbitration Provision." (*Id.* at Ex. C, p. 16.) The agreement also makes clear that "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services" are subject to the Arbitration Provision. (*Id.* at Ex. C, p. 14.) Because Plaintiff entered into a valid and enforceable arbitration agreement, he expressly waived his right to pursue his claims in court.[4]

### A. The Federal Arbitration Act Applies To The Arbitration Provision

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("Concepcion"), the Federal Arbitration Act ("FAA") declares a liberal policy favoring the enforcement of arbitration policies, stating: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

---

[4] Under well-established Third Circuit law, Plaintiff's claims against Uber also must proceed in arbitration because Rasier is a wholly-owned subsidiary of Uber. (Colman Decl., ¶¶ 2, 4). *See Pritzker* v. *Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121-1122 (3d Cir. Pa. 1993) (finding that claims against a sister entity that was not a signatory to an arbitration agreement were still subject to compulsory arbitration where the plaintiffs' "own theory of liability demonstrates that [the non-signatory defendant's] interests are directly related to, if not predicated upon, [the signatory defendant's] conduct.").

revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); see also *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration"); *Pocalyko v. Baker Tilly Virchow Crouse, LLP*, 2016 WL 6962875, at *2 (E.D. Pa. Nov. 29, 2016) (Baylson, J.). The FAA permits private parties to "trade[] the procedures … of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy ***favoring*** arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone*, 460 U.S. at 24) (emphasis added); *Direct TV, Inc. v. Imburgia*, __ U.S. __, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act").

The Arbitration Provision at issue here is indisputably governed by the FAA. First, the Arbitration Provision so states, which is sufficient to bring it within the purview of the FAA. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (for state law to apply exclusively to an arbitration agreement, the agreement must opt out of the FAA and express that state law applies); *Imburgia*, 136 S. Ct. at 468-71 (FAA applies even if agreement designates a state choice of law). Second, the agreements containing the Arbitration Provision affect

commerce. The FAA's term "involving commerce" is interpreted broadly. *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce). Plaintiff's use of the Uber App to transport riders in exchange for a fare involves commerce sufficient for the FAA to apply.

In his Complaint, Plaintiff alleges that Uber discriminated against him in violation of the ADA. Plaintiff's claims are indisputably covered under the clear and unambiguous terms of the Arbitration Provision that he agreed to be bound by, and therefore, they must be submitted to binding arbitration. Moreover, Plaintiff clearly and unmistakably agreed that any challenge to the enforceability or applicability of the Agreement must be decided by the Arbitrator – not the Court. *See generally Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010).

**B.  The Arbitration Provisions Are Valid And Must Be Enforced Under The FAA**

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, only two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). In addition to the reasons set forth herein, District Courts throughout the country, including within the Third Circuit, have already determined that these arbitration provisions must be enforced. *See Singh v. Uber Techs., Inc.*, __ F. Supp. 3d. __ 2017 WL 396545, at *12 (D.N.J. Jan. 30, 2017); *Suarez v. Uber Techs. Inc.*, 2016 WL 2348706, at *5 (M.D. Fla. May 4, 2016); *Varon v. Uber Techs. Inc.*, 2016 WL 1752835, at *6 (D. Md.

May 3, 2016); *Sena v. Uber Techs. Inc.*, 2016 WL 1376445, at *8 (D. Ariz. April 7, 2016); *Bruster v. Uber Techs. Inc.*, 188 F.Supp.3d 658, 664-65 (N.D. Ohio 2016); *Lee v. Uber Techs., Inc.*, __ F.Supp.3d __, 2016 WL 5417215, at *6 (N.D. Ill., Sept. 21, 2016); *Micheletti v. Uber Techs., Inc.*, __ F.Supp.3d __, 2016 WL 5793799, at *7 (W.D. Tex. Oct. 3, 2016); *Zawada v. Uber Techs., Inc.*, 2016 WL 7439198. At * 5 (E.D. Mi. Dec. 27, 2016).

### 1. The Arbitration Provision Delegates The Gateway Issues To The Arbitrator

Before reaching these gateway issues, however, the Court must examine the underlying contract to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W., Inc.*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Buckeye Check Cashing*, 546 U.S. at 446 ("the issue of the contract's validity is considered by the arbitrator in the first instance"). Accordingly, under *Rent-A-Center*, the Court may not address the threshold question of arbitrability. *Pocalyko*, 2016 WL 6962875, at *2 (where an arbitration agreement requires disputes concerning its validity to be decided by the arbitrator, "challenges directed at the enforceability of the agreement as a whole (contrasted with challenges directed to the enforceability of the delegation of authority to the arbitrator) should be decided by the arbitrator.").[5] The Court must instead dismiss Plaintiff's claims without prejudice to Plaintiff's ability to address – in arbitration – threshold questions of arbitrability.

United States District Court Judges sitting in the District of New Jersey, the District of Eastern District of Michigan, the District of Arizona, the District of Maryland, the District of

---

[5] *Accord Aviles v. Russell Stover Candies, Inc.*, 559 Fed.Appx. 413, 415 (5th Cir. 2014); *Wootten v. Fisher Investments, Inc.*, 688 F.3d 487, 493-94 (8th Cir. 2012); *Momot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011).

Ohio, the Middle District of Florida, the Northern District of Illinois, and the Western District of Texas recently reached this same conclusion when evaluating similar arbitration provisions in actions brought against Defendants. In each case, the court enforced the arbitration provisions, and granted Defendants' motions to dismiss and compel individual arbitration. *See Singh*, 2017 WL 396545 at *12 ("because the parties have agreed to permit the arbitrator to decide issues of arbitrability under the Agreement's delegation clause, that determination shall be reserved for the arbitrator."); *Suarez*, 2016 WL 2348706, at *5 ("The parties entered into valid and enforceable agreements to arbitrate questions of arbitrability."); *Varon*, 2016 WL 1752835, at *6 (The "delegation clause is a valid and enforceable agreement that was clearly and unmistakably communicated and is neither procedurally nor substantively unconscionable."); *Sena*, 2016 WL 1376445, at *8 ("The Court must compel Sena to submit to arbitration because the parties entered into a valid and enforceable agreement to arbitrate questions of arbitrability."); *Bruster*, 188 F.Supp 3d. 664-65 ("Because the June 2014 delegation provision is valid, this court does not decide whether the arbitration provision is enforceable. The June 2014 delegation provision delegates issues of arbitrability to the arbitrator, not the Court."); *Lee*, 2016 WL 5417215, at *7 ("The plaintiffs and Uber have entered into a valid agreement to delegate to an arbitrator questions of arbitrability. Accordingly, this Court cannot address the plaintiffs' argument that the Arbitration Provision is unconscionable; that is an issue for an arbitrator."); *Micheletti*, 2016 WL 5793799 at p. 13 ("the parties entered into a valid and enforceable agreement to delegate questions of arbitrability to an arbitrator. The delegation provision is clear and unmistakable, and it is not unconscionable."); *Zawada*, 2016 WL 7439198 at * 5 ("the Court concludes that the delegation provision evinces a clear and unmistakable intent to delegate the question of arbitrability to the arbitrator."). Indeed, the Ninth Circuit reversed a District Court that did not

delegate questions of arbitrability to the arbitrator under a similar Arbitration Provision. *Mohamed v. Uber Technologies, Inc.*, 2016 WL 4651409 (9th Cir. Sep. 7, 2016) ("The district court should have ordered the parties to arbitrate their dispute over arbitrability ... and we remand with instructions that it do so.").

Here, as in those other actions brought against Uber, the Arbitration Provision clearly and unmistakably provides that it is a "full and complete agreement relating to the formal resolution of disputes arising out of this Agreement," and that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." (Colman Decl. at Ex. C, pp. 15-16.) Therefore, any question as to the validity of the Arbitration Provision and whether they apply to this dispute has been delegated to, and must be decided by, the arbitrator.

### 2. The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, rather than the arbitrator, should evaluate the enforceability and interpretation of the Arbitration Provision, both of the "gateway" issues have been satisfied here, and thus, Plaintiff's claims should be compelled to arbitration.

#### a. A Valid Agreement To Arbitrate Exists

General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Specifically, courts look to the relevant state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F. 3d 513, 524 (3d Cir. 2009) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *accord Oliver v. Nordstrom King of Prussia*, 2010 WL 5121966, at *3 (E.D. Pa. Dec. 14, 2010).

Pursuant to the law of Pennsylvania, the state in which Plaintiff resides, where the contract was formed, and the location where Plaintiff provided transportation services using the Uber App, a valid contract requires: "(1) a mutual manifestation of an intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration." *See Oliver*, 2010 WL 5121966 at *3 (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).

### (1) There Was A Mutual Manifestation Of An Intent To Be Bound By The Arbitration Agreement

Plaintiff, similar to other independent transportation drivers in Pennsylvania, had the option of (1) opting out of the Arbitration Provision and entering into a contractual relationship with Defendants or (2) agreeing to be bound to the Arbitration Provision and entering into a contractual relationship. Plaintiff accepted to be bound by the terms of the Arbitration Provision, and did not opt out. (*Id.*, ¶¶ 9; 12; *id.* at Exs. A-B; D.)

Here, Plaintiff's account with Uber became active on October 19, 2015, and he waited until the following day to consent to the Rasier Agreement. (*Id.* at ¶ 12.) After being provided this opportunity to review the Rasier Agreement, Plaintiff agreed to the Arbitration Provision on October 20, 2015, by clicking "YES, I AGREE" to the Rasier Agreement, and subsequently, confirming his acceptance of the agreement and its terms a second time by clicking "YES, I AGREE" again. (*Id.* at ¶¶ 9; 12; *id.* at Exs. A-B; D.) *See Oliver*, 2013 WL 5433350 at *3 (finding arbitration agreement enforceable even if the plaintiff " may have misunderstood what the agreement encompassed," when the plaintiff "signed multiple documents in which she assented to arbitrate certain claims against [the defendant]."); *Venuto v. Ins. Co. of North Am,* 1998 U.S. Dist. LEXIS 11050 at *4 (E.D. Pa. Jul. 22, 1998) (The FAA only requires that the agreement to arbitrate be in writing—not that a party sign the agreement. Therefore, the

plaintiff's knowledge of the agreement was sufficient to find an enforceable arbitration agreement).

Under the opt out clause, Plaintiff had thirty days to opt out of the agreement after accepting it, but he did not do so, thereby becoming bound by the terms of the Arbitration Provision.[6] There can therefore be no question that Plaintiff intended to be bound by the Arbitration Provision.

### (2) The Terms Of The Arbitration Agreement Are Sufficiently Definite To Be Enforced

The terms of the Arbitration Provision and Plaintiff's agreement to arbitrate disputes are anything but ambiguous. The Arbitration Provision specifically states that the agreement to arbitrate covers "disputes arising out of or related to [the] Agreement and disputes arising out of or related to [Plaintiff's] relationship with [Uber/Rasier]." (*Id*. at Ex. C, p. 16.) It also explicitly states that the agreement to arbitrate applies to "claims arising under the . . . Americans with Disabilities Act. . . ." (*Id*.) *See Varallo v. Elkins Park Hosp.*, 63 Fed.Appx. 601, 603 (3d Cir. 2003) (finding that claims which "touch matters" covered by the parties' contract must be arbitrated, "whatever the legal labels attached to them"). The Arbitration Provision goes on to explain the process for selecting an arbitrator and the arbitration procedures from initiation through hearing to which Plaintiff consented. (*See generally* Colman Decl. at Ex. C.) By accepting the Rasier Agreement, Plaintiff agreed to be bound by the terms of the Arbitration Provision, and specifically, "to resolve any dispute in arbitration." (*Id*. at Ex. C, p.17.) As set

---

[6] *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014) (individual who is provided the opportunity to opt out of an arbitration agreement is "free not to arbitrate," and, in declining that opportunity, the employee makes the choice to arbitrate his or her potential claims); *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir. 1999) (distinguishing mandatory arbitration agreement from one in which individual is free to opt out); *Black v. JP Morgan Chase & Co.*, Civil Action No. 10–848, 2011 WL 3940236, at *19 (W.D. Pa. Aug. 25, 2011) (finding that, because plaintiff was given right to opt out and she failed to do so, court could not conclude that plaintiff "lacked a meaningful choice").

forth above, Plaintiff agreed to be bound by the terms of the Arbitration Provision, and thus, his acceptance was clear and unequivocal. (*Id.*, ¶ 9; *id.* at Exs. A-B.) Accordingly, the terms of the Arbitration Provision are sufficiently definite to be enforced.[7]

### (3) Consideration Supports The Arbitration Provision

Courts applying Pennsylvania law have held that agreement by the parties to be bound by arbitration is sufficient consideration to create a binding contract. *See Blair*, 283 F.3d at 603-04 (stating that "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *Marotta v. Toll Brothers, Inc.*, No. 09-2328, 2010 WL 744174, at *4 fn. 5 (E.D. Pa. Mar. 3, 2010) (citing *Blair*, 283 F.3d at 603). Here, Plaintiff did not have to agree to the Arbitration Provision to form a contractual relationship with Defendants, and as stated in Mr. Colman's declaration, thousands of drivers have opted out of the Arbitration Provision and still formed contractual relationships with Defendants. (Colman Decl., ¶ 13.) The opt out clause of the Arbitration Provision states, "[a]rbitration is not a mandatory condition of your contractual relationship with [Uber/Rasier]. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision." (*Id.* at Ex. C, p. 18.) Despite this, Plaintiff affirmatively accepted the Rasier Agreement and agreed to be bound by the terms of the Arbitration Provision on October 20, 2015. (*Id.* at ¶¶ 9; 12; *id.* at Ex. D.) Consideration exists for the Arbitration Provision because

---

[7] *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014) (individual who is provided the opportunity to opt out of an arbitration agreement is free not to arbitrate, and, in declining that opportunity, the employee makes the choice to arbitrate his or her potential claims); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (distinguishing mandatory arbitration agreement from one in which individual is free to opt out); *Black v. JP Morgan Chase & Co.*, Civil Action No. 10–848, 2011 WL 3940236, at *19 (W.D. Pa. Aug. 25, 2011) (finding that, because plaintiff was given right to opt out and she failed to do so, court could not conclude that plaintiff "lacked a meaningful choice"); *Bruster*, 2016 WL 2962403, at *4 (finding no procedural unconscionability where the plaintiff was provided the opportunity to opt out); *Sena*, 2016 WL 1376445, at *6 (same); *Varon*, 2016 WL 1752835, at *5 (same); *Suarez*, 2016 WL 2349706, at * 4 (same).

both parties agreed that arbitration would be the method by which they would settle disputes. (Colman Decl., ¶ 12; *see generally id.* at Exs. C-D.) The arbitration agreement at issue is, therefore, valid and binding under Pennsylvania law.

          **b.**     **Plaintiff's Claims Fall Within The Scope Of The Arbitration Agreement**

The FAA requires courts to apply a presumption in favor of arbitrability. See *Moses H. Cone*, 460 U.S. at 24-25. In fact, courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). This case does not present a close call. In the arbitration context, the phrase "arising out of or relating to" an underlying agreement is the opposite of a limiting term: it is language that courts have frequently deemed to be "unlimited" – the broadest sort of all-encompassing language available. *See Southland Corp. v. Keating*, 465 U.S. 1, 15-16 n. 7 (1984); *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("In sum, when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction"); *Renfrew Ctrs. v. Uni/Care Sys.*, 920 F. Supp. 2d 572, 574 (E.D. Pa. 2013) ("These cases contain the quintessential broad arbitration provision, that directs to arbitration any controversy or claim 'arising out of' or 'related to' the agreement").

Where, as here, the parties have specifically agreed to arbitrate "claims arising under the . . . Americans with Disabilities Act," Plaintiff's ADA claim obviously falls within the expressly stated scope of the agreement to arbitrate. (Colman Decl. at Ex. C, p. 16.) Here, Plaintiff had adequate opportunity to review the Arbitration Provision, each section is conspicuous, his claims fall squarely within the scope of the Arbitration Provision, and he had a meaningful opportunity

to opt out of the provision, which he did not exercise. (*Id.* at ¶¶ 12-13; *id*. at Exs. C-D.) Accordingly, a valid agreement to arbitrate this dispute exists, and Plaintiff must be ordered to arbitrate.

### C. This Action Should Be Dismissed.

Where some, but not all, of a plaintiff's claims are arbitrable, a stay of judicial proceedings pending arbitration may be appropriate. However, when all of a plaintiff's claims are arbitrable, a stay is unnecessary, and the legal action should be dismissed. *Gedid v. Huntington Nat'l Bank*, 2012 WL 691637, at *7 (W.D. Pa. Feb. 10, 2012) (citing *Blair*, 283 F.3d at 600) (if all of the claims are arbitrable, a court may dismiss the entire action); *see also Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 188 (3d Cir. 1998) (affirming dismissal of claims and compelling arbitration); *Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 108 Fed. Appx. 35, 38 (3d Cir. 2004) (same). Indeed, the District Courts throughout the country that have enforced Uber's Arbitration Provisions have dismissed, rather than stayed, the proceedings. *See Singh*, 2017 WL 396545, at *12; *Suarez*, 2016 WL 2348706, at *5; *Varon*, 2016 WL 1752835, at *6; *Sena*, 2016 WL 1376445, at *8; *Bruster*, 2016 WL 2962403, at *5; *Lee*, 2016 WL 5417215, at *7; *Micheletti*, 2016 WL 5793799, at *7.

**III.    CONCLUSION**

Because the parties entered into a valid contract requiring the submission of any disputes arising out of Plaintiff's relationship with Uber to be decided in arbitration, and this dispute falls within the scope of that agreement, this Court should dismiss this action and order Plaintiff to arbitration.

Respectfully submitted,

/s/ *Paul C. Lantis*
Paul C. Lantis
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 (t)
267.402-3131 (f)

*Attorneys for Defendant*
UBER TECHNOLOGIES, INC.